FILED IN OPEN COURT
6/3/2021
CLERK, U S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 3:20-cr-111-BJD-JRK

EDDIE ANGEL MARTINEZ-MARQUEZ
  a/k/a "Macho,"
  a/k/a "Machito,"
  a/k/a "Manchito,"
  a/k/a "Barbu,"
  a/k/a "bin Laden"

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Karin Hoppmann, Acting United States Attorney for the Middle District of Florida, and the defendant, EDDIE ANGEL MARTINEZ-MARQUEZ, and the attorney for the defendant, Edwin Javier Prado-Galarza, Esq., mutually agree as follows:

**A.   Particularized Terms**

1.   Count Pleading To

The defendant shall enter a plea of guilty to Count One of the Indictment.  Count One charges the defendant with conspiracy to possess with intent to distribute and to distribute, five kilograms or more of a substance and mixture containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).

Defendant's Initials  EAM                                  AF Approval  

2.    <u>Minimum and Maximum Penalties</u>

Count One is punishable by a mandatory minimum term of imprisonment of 10 years up to life imprisonment, a fine of $10,000,000, both imprisonment and a fine, a term of supervised release of at least five years, a special assessment of $100, and in the event of a violation of the terms of supervised release, an additional term of imprisonment of not more than five years, possibly followed by an additional term of supervised release.

3.    <u>Apprendi v. New Jersey</u>

Under <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), a sentence of a mandatory minimum term of imprisonment of 10 years up to life imprisonment may be imposed because the following facts have been admitted by the defendant and are established by this plea of guilty: the quantity of cocaine involved in the conspiracy was five kilograms or more.

4.    <u>Elements of the Offense</u>

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count One are:

| | |
|---|---|
| <u>One</u>: | two or more people in some way agreed to try to accomplish a shared and unlawful plan to possess with intent to distribute and to distribute cocaine; |
| <u>Two</u>: | the Defendant knew the unlawful purpose of the plan and willfully joined in it; and |
| <u>Three</u>: | the object of the unlawful plan was to possess with the |

Defendant's Initials  EAM                    2

intent to distribute and to distribute five kilograms or more of cocaine.

5.    Count Dismissed

At the time of sentencing, the remaining count against the defendant, Count Two, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

6.    Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level.  The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant

Defendant's Initials  EAM                  3

agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

      7.    Adjusted Offense Level

      Pursuant to Fed. R. Crim. P. 11(c)(1)(B), based on the information now available to the parties, the United States and the defendant will recommend to the Court that the defendant's adjusted offense level be calculated at 32, as determined below:

| Guideline | Description | Levels |
|---|---|---|
| § 2D1.1 | Base Offense | 32 |
| § 2B1.1(b) | Role in Offense | +3 |
| § 3E1.1 | Acceptance of Responsibility | -3 |
| Total Adjusted Offense Level | | 32 |

      The defendant understands that this calculation is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.  The defendant further understands that if the United States learns of information that would make this calculation inaccurate and discloses that information to the defendant before sentencing, then neither the United States nor the defendant will be required to recommend to the Court that the defendant's adjusted offense level is 32.

      8.    Forfeiture of Assets

      The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture,

Defendant's Initials _EAM_      4

pursuant to 21 U.S.C. § 853, whether in the possession or control of the United States, the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, the $500,000.00 proceeds the defendant admits he obtained, as the result of the commission of the offense(s) to which the defendant is pleading guilty. The defendant further consents to the filing of a motion by the United States for immediate entry of an order of forfeiture.

The defendant acknowledges and agrees that: (1) the defendant obtained this amount as a result of the commission of the offense(s), and (2) as a result of the acts and omissions of the defendant, the proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence. Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offense(s) of conviction. The defendant further consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offense(s) and consents to the entry of the forfeiture order into the Treasury Offset Program. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should

Defendant's Initials  **EAM**                5

authorize the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas), pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The defendant also agrees to waive all constitutional, statutory, and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all substitute assets and to transfer custody of such assets to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all

Defendant's Initials __EAM__                6

assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets.  The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the defendant's sentencing.  In addition to providing full and complete information about substitute assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of

Defendant's Initials **EAM**                 7

responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

**B.   Standard Terms and Conditions**

    1.   Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to

Defendant's Initials  EAM          8

the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the Defendant agrees to deliver a check or money order to the Clerk of the Court in the amount of $100, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing.

The defendant understands that this agreement imposes no limitation as to fine.

2.    Supervised Release

The defendant understands that the offense to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information,

Defendant's Initials **EAM**                    9

including the totality of the defendant's criminal activities, if any, not limited to the count to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

     5.     <u>Financial Disclosures</u>

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the

Defendant's Initials  <u>EAM</u>        10

purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.  The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

      6.   <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to nor bound by this agreement.  The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office.  The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office.  Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement.  The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

Defendant's Initials _EAM_       11

7.     Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.     Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

Defendant's Initials  EAM                    12

9.   <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.   <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial.  The defendant further understands that if defendant pleads guilty, the Court may ask defendant

Defendant's Initials _EAM_                         13

questions about the offense or offenses to which defendant pleaded, and if defendant

answers those questions under oath, on the record, and in the presence of counsel (if

any), defendant's answers may later be used against defendant in a prosecution for

perjury or false statement.  The defendant also understands that defendant will be

adjudicated guilty of the offenses to which defendant has pleaded and, if any of such

offenses are felonies, may thereby be deprived of certain rights, such as the right to

vote, to hold public office, to serve on a jury, or to have possession of firearms.

    11.    <u>Factual Basis</u>

        Defendant is pleading guilty because defendant is in fact guilty.  The

defendant certifies that defendant does hereby admit that the facts set forth in the

attached "Factual Basis," which is incorporated herein by reference, are true, and

were this case to go to trial, the United States would be able to prove those specific

facts and others beyond a reasonable doubt.

    12.    <u>Entire Agreement</u>

        This plea agreement constitutes the entire agreement between the

government and the defendant with respect to the aforementioned guilty plea and no

other promises, agreements, or representations exist or have been made to the

defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials _EAM_           14

13.   Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this __3rd__ day of ~~April~~ June, 2021.

KARIN HOPPMANN
Acting United States Attorney

_____
EDDIE A. MARTINEZ-MARQUEZ
Defendant

_____
MICHAEL J. COOLICAN
Assistant United States Attorney

_____
EDWIN J. PRADO-GALARZA
Attorney for Defendant

_____ for:
FRANK TALBOT
Assistant United States Attorney
Chief, Jacksonville Division

Defendant's Initials  EAM                    15

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                              CASE NO. 3:20-cr-111-BJD-JRK

EDDIE ANGEL MARTINEZ-MARQUEZ
  a/k/a "Macho,"
  a/k/a "Machito,"
  a/k/a "Manchito,"
  a/k/a "Barbu,"
  a/k/a "bin Laden"

## PERSONALIZATION OF ELEMENTS

### As to Count One:

1.    Do you admit that no later than December 2016 and continuing through August 30, 2018, in the Middle District of Florida, you and at least one other person in some way agreed to try to accomplish a shared and unlawful plan to possess with intent to distribute and to distribute cocaine, a Schedule II controlled substance?

2.    Did you know the unlawful purpose of the plan and willfully join in it?

3.    Do you admit that the object of the unlawful plan was to possess with the intent to distribute and to distribute five kilograms or more of cocaine?

Defendant's Initials  EAM

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                        CASE NO. 3:20-cr-111-BJD-JRK

EDDIE ANGEL MARTINEZ-MARQUEZ
  a/k/a "Macho,"
  a/k/a "Machito,"
  a/k/a "Manchito,"
  a/k/a "Barbu,"
  a/k/a "bin Laden"

## FACTUAL BASIS

Beginning no later than December 2016 and continuing through August 30,

2018, the defendant, Eddie Angel Martinez-Marquez, conspired with other

individuals, including two individuals who later became cooperating defendants

(CD1 and CD2) to possess with intent to distribute and to distribute cocaine.  The

parties estimate that the conspiracy involved the distribution of at least 15 kilograms,

but fewer than 50 kilograms, of cocaine.

According to CD1, in December 2016, the defendant began supplying him

with cocaine, which CD1 would then sell in the Jacksonville, Florida area.  The

defendant supplied cocaine to CD1 until CD1's arrest on August 30, 2018.

According to CD1, initially, he was buying an ounce of cocaine at a time from the

defendant, but amounts increased over time, and on certain occasions, the defendant

would supply CD1 with two kilograms of cocaine in a single transaction.  Even after

CD1 began buying cocaine from other sources of supply, he continued to buy

Defendant's Initials **EAM**

cocaine from the defendant, usually one or two kilograms per transaction, typically twice per month.  According to CD1, the defendant charged him $27,000 per kilogram, and at times, "fronted" him the drugs, or gave the drugs to him on credit.

According to CD1, in his dealings with the defendant, CD1 typically would send a courier to retrieve cocaine and deliver cash payments, but on some occasions, the defendant would send his own courier to meet with CD1 to deliver cocaine or receive payments.  During the summer of 2018, CD2 worked as a courier for CD1. According to CD1, one of the locations where CD2 and other couriers would receive cocaine or deliver cash was an apartment at the Camden Lee Vista apartment complex in Orlando, Florida.

In March 2018, federal agents saw the defendant driving to and from the Camden Lee Vista apartment complex.  A particular apartment at that complex, number 1826, was leased to a family member of the defendant, and the utilities for it were in the name of the defendant's longtime girlfriend.

CD2 has told law enforcement that on five or six occasions in 2018, he acted as a courier for CD1, picking up cocaine at an apartment complex in Orlando and sometimes delivering cash.  According to CD2, the cocaine that he received at the apartment was supplied by the defendant or an associate of his.  The least amount of cocaine that CD2 picked up was one kilogram, and the most was three kilograms. According to CD2, on one occasion, he delivered $78,000 to the defendant at the apartment in Orlando.  He did so on behalf of CD1 and understood that the money was payment for a drug debt.

2

Defendant's Initials  EAM

In 2018, federal agents obtained court authorization to intercept certain telephonic communications. The intercepted communications were typically in Spanish, but are described in English below. Multiple witnesses have identified the defendant's voice on the calls attributed to him below.

The content of intercepted telephone conversations between CD1 and CD2 and between CD1 and the defendant, as well as historical cell-site information, establish that CD2 travelled from Jacksonville to Orlando and directly back in the evening of August 8 and early morning hours of August 9, 2018. It is clear from the intercepted conversations that, at CD1's direction, CD2 went to an apartment in Orlando to pick something up, which he then returned with to Jacksonville. While CD2 was on his way to Orlando, CD1 spoke with the defendant to update him on CD2's arrival time at the apartment. During these calls, the individuals were careful not to specify on the phone what it was that CD2 was retrieving.

Intercepted telephone conversations and historical cell-site information establish that CD2 made another run from Jacksonville to Orlando and back in the evening of August 10 and early morning of August 11. As with the prior trip, CD2 stayed in contact with the CD1 by phone. During a recorded call, CD1 told CD2 that he was to pick up "one" at the apartment and wait there for another "two," which CD2 indicated he would do. DEA and FBI agents surveilled CD2 as he drove an SUV from Jacksonville to the Camden Lee Vista apartment complex in Orlando. Agents saw him retrieve a key from under the front door mat and enter apartment 1826.

3

Defendant's Initials  EAM

CD1 later received a call from the defendant who told him that CD2 should take the "one" that was there and that he (the defendant) would have to send "Peter" the next day.  When CD1 started to complain, the defendant assured him that he would make a call right then so that there would be a pickup at 8:00 or 9:00 a.m.  In response, CD1 appeared to push the defendant to make sure that their business could be completed soon, explaining that he (CD1) had already arranged to meet with the "young guy" at 11:00 a.m.

The agents surveilling CD2 eventually saw him leave the apartment carrying an object to the SUV in which he had arrived.  CD2's return drive to Jacksonville was interrupted when a Florida Highway Patrol Trooper stopped CD2 for a traffic offense in Jacksonville.  The Trooper arrested CD2 for driving with a suspended license and took him from the scene.  Thereafter, a law enforcement canine (trained in the detection of illegal drugs) conducted a free air sniff of the SUV and alerted, indicating the presence of drugs.  Federal agents then searched the SUV and located a well-hidden bundle of cocaine that weighed approximately one kilogram.

CD2 was not charged with a drug offense at that time and law enforcement did not disclose to him that a kilogram of cocaine was found hidden in the SUV. After CD2 was released from custody for the driving offense, he made no effort to recover the SUV or his cellphone, which had been seized when he was arrested.

Historical cell-site information associated with that seized cellphone shows that CD2 travelled from Jacksonville to the Orlando area and returned almost immediately on at least two other occasions prior to the two trips described above.

4

Defendant's Initials  EAM

On August 14, 2018, the defendant called CD1 and they discussed the defendant's source of supply, who was referred to as the "owner of that work." The defendant told CD1 that he had informed his source that "this situation happened" and that he was hoping to get something at the lower "price from over there," which he could pay in "two installments." He discussed with CD1 the fact that there is "no work," that "work is expensive," but that "when the work arrives here is when it gains value." The defendant explained that he had arranged to have CD1 pay back the source by giving him an extra "3,000 bucks" for each of the next "three works" for a total of "25 for the work." This was acceptable to CD1, who remarked that he could "let it go at 30," that is, sell each kilogram of cocaine for $30,000.

During this call, the defendant also told CD1 to send him a car so that a "system" could be installed, because CD1 "can't take any more risks." He added "that thing falling and nobody doing anything," *i.e.* no one being arrested, "smells like an investigation." The defendant described the installation in cars of vacuum-sealed compartments that prevent canines from detecting hidden drugs. He instructed CD1 that a car equipped with such a compartment should not be used as one's everyday car. He advised that "these little mistakes could get us fucked."

On August 23, 2018, CD1 had a series of intercepted calls with an individual (Associate 1) setting up a meeting and negotiating a price. They eventually agreed on "twenty-nine" for one and "twenty-nine five" for "another one." In the meantime, CD1 fielded a series of calls from a man later identified as a person having the first name Peter. Using a phone with an Orlando area code, "Peter"

5

Defendant's Initials EAM

reported to CD1 on his estimated time of arrival at a commercial property where CD1 and CD2 operated their drug business.  Later that day, surveillance teams observed CD1, CD2, Associate 1, and "Peter" all at the commercial property.

On August 30, 2018, federal agents executed a search warrant at the commercial property.  Agents located, among other things, three bags containing approximately 200 grams of cocaine, empty kilo wrappers and other plastic bags containing cocaine residue, assorted ammunition, and firearm magazines.  CD1 and CD2 were present at the commercial property and arrested.  Following their arrest, the defendant stopped using the phone number that he had used to communicate with CD1.

6

Defendant's Initials EAM